In re Wayne G. BUCHANAN, a/k/a Asbery Buchanan, and Carolyn G. Buchanan, Debtors.

In re Don A. MORTON, Debtor.

Leon STEINBERG, Trustee and Douglas Q. Wickham, Trustee, Plaintiffs,

v.

Don MORTON; Michael Max Talley and wife, Eleanor Jean Talley; William Roger Phillips and wife, Gwendolyn Phillips; David F. Hill; David T. Hill; Robert N. Navratil, Trustee, Defendants.

Bankruptcy Nos. 3–82–00037, 3–82–00489. Adv. No. 3–82–0128.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 7, 1983.

Goddard & Gamble, Carl P. McDonald, Arthur Goddard, Maryville, Tenn., for plaintiffs.

Perry P. Paine, Jr., Maryville, Tenn., for defendants Talley and Phillips.

Bird, Navratil & Bird, Frank B. Bird, Maryville, Tenn., for defendant Navratil.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The question before the court is whether the plaintiff trustees in bankruptcy are entitled to set aside the foreclosure of a deed of trust. The trustees contend that the challenged foreclosure sale may be avoided under 11 U.S.C.A. § 544(b) (1979) because it was fraudulent under both Tenn.Code Ann. § 66–3–101 (1982) and § 66–3–305 (1982).[1] Defendants, Talley and Phillips both grantees of the deed of trust at issue and purchasers at the trustee's sale, deny that the foreclosure sale was fraudulent. They assert that their successful bid at the controverted sale represents an adequate consideration. Additionally, defendants assert that an accord and satisfaction has previously been reached whereby the debtors relinquished any claim to the property at issue.

I

On January 21, 1979, the date of its destruction by fire, the Simple Simon Restaurant was jointly owned by the debtors (Wayne Buchanan and his wife, Carolyn Buchanan, and Don Morton). On the date of loss the restaurant was situated on a 1.2-acre tract[2] in Blount County, subject to the following deeds of trust:

| | DATE OF RECORDATION | ORIGINAL AMOUNT OF DEBT SECURED | MORTGAGORS | MORTGAGEES |
|---|---|---|---|---|
| (1) | Sept. 15, 1971 | $124,000 | Defendants Talley and Phillips | J. Leon Teffeteller, Ina Teffeteller, R. H. Hitch, and Kathleen Hitch |
| (2) | Oct. 26, 1977 | 15,000 | Charles J. Talley and Judith Talley | Defendants Talley and Phillips |
| (3) | Oct. 26, 1977 | 142,000 | Debtors | Charles J. Talley and Judith Talley |

Defendants Talley and Phillips purchased the restaurant property and a contiguous 1.6-acre tract in 1971. They deeded their interest in the Simple Simon property and

---

1. Although they originally alleged that the foreclosure sale at issue was avoidable pursuant to 11 U.S.C.A. § 547 (1979) and 11 U.S.C.A. § 548 (1979), plaintiffs conceded at trial that neither of these statutes entitles them to avoid the contested foreclosure sale.

2. Although Ex. 53 suggests that the acreage of this tract is 1.6, the property conveyed to the debtors is only 51,625 square feet, or approximately 1.2 acres.

the adjoining 1.6-acre tract on April 26, 1976, to Charles J. Talley and his wife, Judith Talley, neither of whom is a party in this action. The consideration for the conveyance was the assumption of the first mortgage indebtedness and a note for $15,000.00 secured by a second deed of trust against the Simple Simon property and the adjoining 1.6-acre tract. No interest was provided for in this note; furthermore, no payments were due against the principal amount until the first mortgage indebtedness had been paid. (Charles J. Talley is the brother of defendant Michael Max Talley.) In October 1977, the debtors acquired the Simple Simon property, but not the adjoining 1.6-acre tract, from Charles J. and Judith Talley in consideration of $33,000.00 cash and their note for $142,000.00 secured by a third deed of trust against the Simple Simon property.

After the fire loss the debtors were unable to make their mortgage payments to Charles J. Talley, who likewise failed to pay the first mortgage payments he and his wife had previously assumed. Also, contrary to their covenants in the deed of trust securing their $15,000.00 note, Charles J. and Judith Talley failed to maintain insurance and to pay the taxes against the Simple Simon property. Defendants Talley and Phillips contacted their attorney about foreclosing their second deed of trust. After receiving notice from defendants Talley and Phillips of their intention to accelerate, Charles J. Talley acknowledged, in writing, that grounds existed for accelerating his indebtedness. (See Ex. 7.) The indebtedness was accelerated, and defendant Navratil, trustee of the second deed of trust, advertised the property for sale. The sale, however, was enjoined by a state court order obtained by a judgment creditor of Charles J. Talley.[3] The restraining order was subsequently dissolved; the property was readvertised for sale; notice of the sale

was sent by certified mail to the debtors by Navratil.[4]

On September 10, 1979, Navratil conducted his trustee's sale, foreclosing the second deed of trust. The sole bidder at the sale, not attended by the debtors, was defendant Michael Max Talley. His successful bid of one dollar ($1.00) purchased both the Simple Simon property, valued at $60,000.00, and the adjoining 1.6-acre tract, worth between $10,000.00 and $15,000.00. However, the property was purchased subject to an unpaid first mortgage indebtedness exceeding $90,000.00 and tax arrearages approximating $2,500.00. Navratil's trustee deed conveying the property to defendants Talley and Phillips was delivered to Michael Max Talley on September 13, 1979.

The gravamen of the trustees' objection to Navratil's foreclosure sale is that it was conducted during the pendency of an insurance claim for the destruction of the Simple Simon Restaurant and its contents. According to the trustees, defendants Talley and Phillips, and their mortgagees, were absolutely and unconditionally protected by the mortgagee loss payable clause of a Travelers Insurance Company policy obtained by the debtors. A letter binding coverage through Travelers, effective January 18, 1979, had indeed been forwarded to debtor Wayne Buchanan by Mullins, Lee, Kelly Ltd., an insurance agency. Defendants Talley and Phillips were aware of this letter prior to their foreclosure, but they had been advised by their attorney that the prospect of payment by Travelers on the insurance claim was slim to none. They in fact did not believe they would realize any recovery from Travelers when Navratil foreclosed their second deed of trust on September 10, 1979.

Nearly six months after Navratil's trustee sale, on March 5, 1980, defendants Talley and Phillips, represented by Perry P. Paine, Jr., filed a complaint against Travelers for judgment in an amount equal to the insurance on the restaurant building ($150,-

---

3. See Ex. 38 (Photocopies of the file in *Shannon v. Navratil,* Case No. E–5529 in the Blount County Circuit Court).

4. The notices, although properly addressed, were returned to Navratil as unclaimed.

000.00). Paine had consented to represent defendants Talley and Phillips on a contingency basis, agreeing to accept 25% of any recovery realized by his clients.[5] Their action against Travelers was consolidated with the declaratory action previously commenced by Travelers on May 8, 1979, against the debtors and others. Ultimately, on August 18, 1980, a judgment was entered finding Travelers liable on its policy to the extent of $150,000.00 for the building and $50,000.00 for the contents.

Pursuant to a disbursement order entered October 28, 1980, the following relevant checks were issued:

| PAYEES | AMOUNT |
|---|---|
| (1) Ina Teffeteller, Kathleen Hitch, Defendants Talley and Phillips, and attorney Perry P. Paine, Jr. | $125,801.39 |
| (2) Michael Max Talley and William Roger Phillips | 1,600.00 [6] |
| (3) Debtors and Crawford & Crawford (attorneys-at-law) | 34,817.53 |

The balance of the insurance proceeds was paid to intervening creditors of Charles and Judith Talley, to taxing authorities, and for court costs. The $125,801.39 check paid in full the first mortgage indebtedness against the Simple Simon property (and the contiguous 1.6-acre tract), reimbursed defendants Talley and Phillips for the monthly mortgage payments they made to the first mortgagees between January 1979 and October 1980, and satisfied the $15,000.00 note of Charles J. and Judith Talley to defendants Talley and Phillips.

Realizing that defendants Talley and Phillips owned both the Simple Simon property and the adjoining 1.6-acre tract, free and clear of any encumbrances, debtors Wayne Buchanan and Don Morton approached Michael Max Talley about returning the Simple Simon property to them. Buchanan and Morton felt that defendants Talley and Phillips had been overcompensated: their obligation to their mortgagees had been satisfied; they had received reimbursement for the mortgage payments to the first mortgagees which they had to pay between January 1979 and October 1980; they received payment in full on the $15,-000.00 note from Charles J. and Judith Talley and their attorney fees connected with the foreclosure; and they owned an unencumbered 2.8-acre tract with a fair market value of between $70,000.00 and $75,000.00. Michael Max Talley agreed [7] to deed the Simple Simon property back to the debtors if, and only if, they would make him whole by paying the attorney fees incurred by defendants Talley and Phillips in their suit against Travelers.[8]

Shortly thereafter the debtors and David T. Hill approached Talley with a proposal—Hill would pay $60,000.00 in exchange for the Simple Simon property. On or about October 30, 1980, defendants Talley and Phillips executed their warranty deed conveying the Simple Simon property to the debtors, who in turn conveyed the property by warranty deed to David F. Hill, the father of David T. Hill. Michael Max Talley testified that two deeds were employed to transfer the Simple Simon property because he wanted a "written release" from the debtors of any claim to the property. These two warranty deeds were delivered to David T. Hill in exchange for $60,000.00, appropriated as follows: (1) defendants Talley and Phillips received $22,500.00, repre-

---

5. William Phillips and Michael Talley both testified that they did not want to invest any additional funds without assurance of recovery. Hence, they were unwilling to pay Paine or any other attorney on any basis except a contingent fee arrangement.

6. This figure represents the attorney fees associated with the foreclosure of the second deed of trust.

7. According to the deposition testimony of debtor Morton, the debtors threatened to commence a lawsuit against defendants Talley and Phillips if the Simple Simon property was not reconveyed to them. See Ex. 48 at 23–24.

8. William Phillips testified that Michael Talley acted as his agent in discussions with the debtors and that he told Michael Talley that he would be happy if they simply broke even.

senting the amount of attorney Paine's fee in connection with the lawsuit against Travelers;[9] (2) the Buchanans and Morton each received $13,333.00 or a total of $26,666.00; (3) the balance of approximately $11,000.00 was tendered to Charles J. Talley for reasons not entirely clear to the court.[10] Neither of the October 1980 warranty deeds delivered to David T. Hill has ever been recorded.[11]

While preparing to consummate the agreement among the debtors, David T. Hill, and himself, Michael Max Talley discovered that Navratil's trustee deed, delivered to him on September 13, 1979, had never been recorded. Talley recorded that deed, the last instrument of record affecting title to the Simple Simon property, on October 30, 1980.

## II

Wayne and Carolyn Buchanan filed their chapter 7 petition on January 12, 1983. Their trustee commenced this adversary proceeding on February 23, 1982. Don Morton was originally named as a defendant due to an alleged indebtedness to the Buchanans. After Morton filed his own chapter 7 petition on April 7, 1982, his trustee was realigned as a party-plaintiff.[12]

■ Section 544(b) of Title 11 of the United States Code enacts in relevant part:

The trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title ....

A condition precedent to recovery under § 544(b) is the existence of a creditor with an allowable claim against his debtor's estate who was an unsecured creditor against whom the challenged transfer was voidable under applicable state law. 4 *Collier on Bankruptcy* ¶ 544.03[1] (15th ed. 1983). The proof adduced at trial established that there are creditors with allowable claims against the debtors' estates who were unsecured creditors of the debtors as of the date of Navratil's trustee sale.[13]

■ It is the trustees' position that the foreclosure of the second deed of trust held by defendants Talley and Phillips is avoidable under Tenn.Code Ann. § 66–3–101 (1982), which provides in part:

*Conveyances in fraud of creditors or purchasers void.*—Every gift, grant, conveyance of lands, ... or chattels, ... by writing otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful ... debts ... shall be deemed and taken only as against the

9. *This sum is actually less than 25% of the amount recovered for the benefit of Paine's clients in the action against Travelers.*

10. Neither Michael Max Talley nor any other witness clearly explained to the court why Charles J. Talley should have received any of the proceeds from Hill. According to Michael Max Talley, this was simply the arrangement among the debtors, David T. Hill, and Charles J. Talley. Both the Simple Simon property and the adjoining 1.6-acre tract were owned by Charles J. Talley and his wife immediately prior to the September 10, 1979, trustee's sale. Perhaps the portion of the Hill proceeds paid to Charles J. Talley represents compensation for the loss of his ownership interest in the 1.6-acre tract. This tract, however, is owned by defendants Talley and Phillips and was not purchased by David T. Hill.

11. Although both David F. Hill and David T. Hill are defendants in this adversary proceeding, the court has severed trial of the issues raised by the trustee's complaint against them. The trustees seek a turnover from defendants Hill of the Talley and Phillips warranty deed to the debtors and a determination that their interest in the Simple Simon property is superior to any interest of either defendant Hill.

12. The court has postponed trial of the Buchanan trustee's claim against Morton pending resolution of the claims pertaining to the Simple Simon property.

13. See Ex. 46 and Ex. 52 (schedules attached to debtors' respective petitions in bankruptcy).

person, his heirs, successors, executors, administrators, and assigns, whose debts ... by such guileful and covinous practices as aforesaid, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void ....

By the express terms of this statute intent to delay, hinder, or defraud creditors must be proved before a conveyance may be avoided. The proof in this case does not preponderate in favor of a finding that defendants Talley and Phillips intended to defraud either the debtors or their creditors by enforcing their second deed of trust. The motives for foreclosure during the pendency of the insurance claim against Travelers are readily apparent from the deposition testimony of Michael Max Talley:

Q: What did you tell him [defendant Navratil] as to why you wanted foreclosure to occur?

A: Because we [defendants Talley and Phillips] had a liability on that piece of property [the entire 2.8-acre tract] of almost $100,000.00—there was no building on it—it was in ashes—our [nearby] restaurant and motel were tied to that piece of property—we had to make payments on it—they [debtors] were not making the payments—the taxes were all in arrears for the last year ... we had no idea whether we had an insurance policy or not—Traveler's was fighting it .... [14]

Although the trustees insist that recovery from Travelers by defendants Talley and Phillips was certain, this court must disagree. Defendants Talley and Phillips were not assured of Travelers' liability pursuant to Tenn.Code Ann. § 56–7–804 (1980) (Policies protecting trustees, mortgagees, assignees and like parties) [15] when they instituted foreclosure. In its declaratory action, commenced May 8, 1979, Travelers had requested a determination that its policy was void due to alleged material misrepresentations by the debtors in the procurement of the insurance coverage.[16] Furthermore, in its answer to the complaint filed by defendants Talley and Phillips after the foreclosure, Travelers specifically averred that a mortgagee was not identified in the policy it issued and that it had not been informed of the existence of any mortgagee of the property insured.[17] The former portion of this averment is supported by the case file—no mortgagee loss payee is identified in the

14. See Ex. 41, Deposition of Michael Max Talley at 16–17 (April 29, 1982).

Defendants Talley and Phillips did not simply default on their payments and request foreclosure by the first mortgagees due to a familial relationship. R.H. Hitch, since deceased, was the father of Eleanor Jean Talley, the wife of Michael Max Talley. Mr. Hitch was in poor health in 1979, and defendants Talley and Phillips did not want to upset him with what they perceived to be their problem. See Ex. 42, Deposition of William Roger Phillips at 5–6 (April 29, 1982).

15. This statute recites in material part:

When any person shall as trustee, mortgagee, assignee, or otherwise, possess or have any fire insurance policy on realty made payable to such person, or other person as his interest may appear, then such insurance as to the interest of said trustee, mortgagee, assignee or other person therein named shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by such policy; ... provided, further, that the mortgagee, trustee, assignee, or other such person shall notify the insurance company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee, trustee, assignee, or other such person; and, unless permitted by the policy, it shall be noted thereon, and the mortgagee, trustee, assignee, or other person shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise the policy shall be null and void ....

16. See Ex. 35 (Photocopy of file in *Travelers Insurance Co. v. Morton*, Case No. 5359 in Blount County Circuit Court).

17. See Ex. 36 (Photocopy of file in *Michael Max Talley v. Travelers Insurance Company*, Case No. 1104 in Blount County Circuit Court).

Travelers policy. Under these circumstances, coupled with the fact that they were making monthly payments of $1,000.00 against property owned of record by other parties, the decision of defendants Talley and Phillips to foreclose their second deed of trust is quite understandable. No intent whatsoever to defraud either the debtors or their creditors is apparent when the facts are viewed from the perspective of defendants Talley and Phillips.

■ Plaintiffs also seek to nullify the foreclosure sale and avoid Navratil's trustee deed to defendants Talley and Phillips pursuant to Tenn.Code Ann. § 66–3–305 (1982), which enacts:

> *Conveyances by insolvent without fair consideration declared fraudulent.*—Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Although the proof indicates that the debtors were insolvent on the date of the foreclosure sale, the bid of $1.00 by Michael Max Talley constituted "fair consideration"[18] for the interest purchased. The nominal bid of $1.00 is a "fair equivalent" for the purchase of property with a fair market value of approximately $20,000.00 *less* than the encumbrances against it. Hence, the trustees are not entitled to set aside the disputed foreclosure and avoid Navratil's trustee deed to defendants Talley and Phillips pursuant to Tenn.Code Ann. § 66–3–305 (1982).

At trial the trustees' attorney emphasized that the insurance proceeds were paid by Travelers prior to recordation on October 30, 1980, of the September 10, 1979, trustee deed from Navratil. In effect, the argument is advanced that the $15,000.00 deed of trust note was paid previous to the foreclosure. However, the foreclosure was consummated no later than the execution and delivery of Navratil's trustee deed to Michael Max Talley.

Finally, the court notes that the debtors' initial cash investment in the Simple Simon property was $33,000.00. The cost of improvements, such as carpet replacement, to the restaurant building is not disclosed in the record. On October 28, 1980, in satisfaction of its liability as insurer, Travelers paid $34,817.53 to the debtors and their attorney. The amount of the attorney fee is not a matter of record, but debtor Morton testified that he received $15,721.44 as his share of the insurance proceeds. Presumably the Buchanans received an equal amount. Additionally, the debtors received $26,666.00 from the Hill proceeds. It does not appear that the debtors realized a loss on their capital investment in the Simple Simon property.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

**18.** Tenn.Code Ann. § 66–3–304 (1982) provides:

Fair consideration is given for property, or obligation:

(1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

(2) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.